IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHRISTOPHER SEAN BROWN, ) | |
| ) | |
| Petitioner, ) | No. 2:16-cr-0122-DCN-6 |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This matter is before the court on petitioner Christopher Sean Brown's ("Brown") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, ECF No. 751, and motion to supplement his § 2255 motion, ECF No. 795. The government filed a motion to dismiss or, in the alternative, for summary judgment, ECF No. 774. For the reasons set forth below, the court denies Brown's motions and grants the government's motion.

**I. BACKGROUND**

On February 9, 2016, the government named Brown, along with eight co-defendants, in an eleven-count indictment that targeted associates of the Walterboro, South Carolina street gang "the Cowboys" and charged the defendants with various crimes related to their gang affiliation. Brown was charged in Counts 4 and 5 of the indictment. Count 4 charged Brown with attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(5) and 2, and Count 5 charged Brown with use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, with the conduct charged in Count 4 constituting the underlying crime of violence for Count 5. See ECF No. 1.

1

On January 17, 2017, Brown plead guilty to Count 4 pursuant to a written plea agreement, and the government dismissed Count 5. ECF Nos. 302–305. The plea agreement included a stipulation of facts, which Brown agreed reflected a "true and correct" recounting of the conduct that underlies his conviction. ECF No. 302-1 at 5. Brown stipulated that he took part in a drive-by shooting on May 30, 2013, during which he "fired multiple shots" into a residence where he believed members of a rival gang resided. Id. at 4

Prior to sentencing, the United States Probation Office ("USPO") prepared a presentence report ("PSR"), which calculated the base level for Brown's offense to be 33, pursuant to the United States Sentence Guidelines (the "Guidelines" or "U.S.S.G.") §§ 2E1.3(a)(2) and 2A2.1(a)(1). ECF No. 564 at 11. In short, the PSR found that the May 30 drive-by shooting constituted conduct equivalent to attempted first-degree murder, meaning that § 2A2.1(a)(1)'s cross-reference applied to the base level offense. After subtracting three units for Brown's acceptance of responsibility, the PSR determined an offense level of 30 for Count 4. The PSR's calculation resulted in a recommended sentencing range under the Guidelines of 108–135 months, which was capped by a statutory maximum of 10 years.

An addendum to the PSR reflects that both the government and Brown objected to the PSR's base level offense calculation of 33, noting the parties' shared belief that the May 30 shooting would constitute conduct equivalent to second-degree, not first-degree, murder, meaning that subsection (a)(2) applied to Brown's offense, not subsection (a)(1). Under the parties' theory, Brown's base level offense score would have been 27, not 33. The USPO responded to the objections, noting that the object of Brown's offense would

have constituted first-degree murder, meaning that the cross-reference for first-degree murder under § 2A2.1(a)(1) applied, not the cross-refence under § 2A2.1(a)(2). ECF No. 564-2. The court agreed with the USPO, noting that "I find the actions of the defendant under the admitted facts that he's pled to . . . fulfills the standard for cross-reference for attempted first degree murder." ECF No. 628 at 6:15–21. Therefore, the court found that the PRS properly calculated Brown's Guideline range, overruling the parties' objections.

The court sentenced Brown to an imprisonment terms of 108 months to be followed by a supervised release term of three years. ECF No. 578. Applying the same cross-reference for first-degree murder, the court sentenced Brown's co-defendants, Matthew Rashaun Jones ("Jones") and Clyde Naquan Hampton ("Hampton"), to a prison term of 151 months each. Brown, Jones, and Hampton appealed their sentences to the Fourth Circuit. The Fourth Circuit declined to consider the substance of Brown and Jones's appeals, finding that each had waived his right to appeal pursuant to the written appellate waiver in his plea agreement. United States v. Hampton, 750 F. App'x 196, 198 (4th Cir. 2018). The Fourth Circuit considered the merits of Hampton's appeal, whose plea agreement did not contain a comparable waiver, and found that the PSR's cross-reference for first-degree murder was in error. Id. at 200.

On May 6, 2019, Brown, proceeding pro se, filed a motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. ECF No. 751. The government responded to Brown's motion by filing a motion to dismiss or, in the alternative, for summary judgment. ECF No. 774. Brown responded to the government's motion on October 16, 2019. ECF No. 784. On April 15, 2020, Brown filed a motion to supplement his § 2255 motion. ECF No. 795. The government did not

file a response to the motion to supplement before expiration of the court-imposed deadline of July 10, 2020.[1]  As such, the motions are ripe for review.

## II.  STANDARD

Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).  Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.3d 387, 390-91 (4th Cir. 1990).

> Pursuant to 28 U.S.C. § 2255(a):
>
> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The petitioner must prove the grounds for collateral attack by a preponderance of the evidence.  See King v. United States, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).  In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

---

[1] The government filed a response to Brown's motion to supplement on July 20, 2020.  ECF No. 820.  Because the response is untimely, the court does not consider it in resolving the pending motions.

### III.   DISCUSSION

**A. Motion to Vacate, Set Aside, or Correct Sentence under § 2255**

Brown argues in his motion that he is entitled to relief under § 2255 because his counsel's performance was constitutionally deficient in two ways.  Additionally, in his reply, Brown contends for the first time that he did "not voluntarily or intelligently enter[]" into his plea agreement and appellate waiver.  ECF No. 784 at 1.  The court discusses the law applicable to ineffective assistance of counsel claims and then addresses each of Brown's submitted grounds for relief in turn.

The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e."  U.S. Const. Amend. VI.  To show that a defendant's constitutional right to the assistance of counsel was violated, the defendant must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient when a criminal defendant's "representation fell below an objective standard of reasonableness." Id. at 688.  In assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential[,] and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id.  For a lawyer's representation to violate a defendant's constitutional rights, "his errors must have been so serious that he was not functioning as the 'counsel'

guaranteed [to] the defendant by the Sixth Amendment." United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (quoting Strickland, 466 U.S. at 687).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. For a defendant who pleaded guilty to satisfy Strickland's prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). A defendant cannot show prejudice through after-the-fact "subjective preferences", United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), but instead "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010). Indeed, the Fourth Circuit has confirmed that "[t]he test is objective, not subjective." Fugit, 703 F.3d at 260 (quoting Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012)).

First, Brown argues that his counsel was ineffective because counsel failed to "distinguish[] between first [and] second-degree attempted murder," "which led to an incorrect sentence." ECF No. 751 at 4. The court takes this argument to mean that Brown's attorney was deficient for failing to argue that the cross-reference for second-degree murder, found in § 2A2.1(a)(2), and not the cross-reference for first-degree murder, found in § 2A2.1(a)(1), should have applied to Brown's base offense level. Brown's argument fails because he cannot satisfy either of Strickland's prongs. By way of review, despite the parties' agreement that the cross-reference to second-degree

murder would apply to Brown's base offense level, the PSR found that the cross-reference to first-degree murder applied, and the court agreed. Under the first prong, Brown cannot show that his counsel's performance fell below an objective standard of reasonableness because his counsel did, in fact, argue that the cross-reference for second-degree murder, not first-degree murder, should have applied. The Addendum to Brown's PSR clearly indicates in the "Objections" sections that Brown's attorney, like the government, objected to the calculation of his base offense level:

OBJECTIONS

By the Government

> The presentence report scores the offense conduct in Paragraph 61 with a base offense level of 33, based upon a conclusion that the object of the attempted murder would have constituted first degree murder pursuant to U.S.S.G. section 2A2.1(a)(1). In its plea agreement, the government agreed with the defendant that a base offense level of 27 is appropriate, pursuant to U.S.S.G. section 2A2.1(a)(2).

[. . .]

By the Defendant

> The defendant joins in the government's objection to the base offense level and the resulting total offense level.

ECF No. 564-2.

Moreover, even if Brown could show that his counsel failed to make this argument, he would be unable to show that such a failure resulted in any prejudice. As discussed above, the government lodged the same objection to Brown's PSR and argued at Brown's sentencing that the cross-reference to second-degree murder should apply to Brown's base offense level calculation. At Brown's sentencing, the court was well aware of the parties' argument on this issue and nevertheless rejected it. The court specifically

explained why the first-degree murder cross-reference should apply even in the face of the parties' objection:

> THE COURT: Okay. I'll overrule your objection. I think the guidelines were properly calculated, based on the facts which are in the presentence report . . . . I find the actions of the defendant under the admitted facts that he's pled to, to plan with confederates who were also members of the Cowboys, to get into a car with firearms and drive by the [ ] residence that was the home of the suspected rival gang members, fulfills the standard for cross-reference for attempted first degree murder.

ECF No. 628, 6:6–21. As such, even assuming that Brown's counsel failed to make the argument, Brown cannot show that his sentence would have been any different because the court considered the argument and plainly disagreed. Therefore, the court rejects the first ground of Brown's motion.

As his second ineffective assistance claim, Brown contends that his counsel's performance fell below the constitutionally permissible standard because counsel failed "to secure an 11(c)(1)(C) plea agreement" and instead accepted a plea that "barred [him] from appealing [his] sentence." ECF No. 751 at 5. The court interprets this argument to include two sub-arguments: that Brown's counsel was ineffective for not obtaining a Rule 11(c)(1)(C) plea agreement and that Brown's counsel was ineffective for advising Brown to consent to a plea agreement that contained a waiver of Brown's appellate rights.

With respect to Brown's Rule 11(c)(1)(C) argument, Brown cannot satisfy either <u>Strickland</u> prong. For one, as the government points out, Brown cannot demonstrate that his counsel was deficient for not procuring an 11(c)(1)(C) plea agreement where there is no evidence that such a plea was "ever on the table." ECF No. 774 at 11. Because there is no evidence that Brown's counsel could have obtained an 11(c)(1)(C) plea agreement from the government, he was not deficient for failing to do so. Moreover, even if

Brown's attorney had successfully negotiated an 11(c)(1)(C) plea agreement, Brown gives no indication that the court would have accepted it. A Rule 11(c)(1)(C) plea agreement specifies "that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition for the case" and that such an agreed-upon sentence range "binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C) (emphasis added). There is no evidence that a court would have accepted a Rule 11(c)(1)(C) plea agreement that bound it to a sentencing range below the range calculated by the PSR. Indeed, as discussed above, the court agreed with the PSR's calculation of the Guideline range, not the parties' calculation. As such, Brown cannot show that he was prejudiced by his counsel's failure to negotiate an 11(c)(1)(C) plea agreement because he cannot show that the court would have accepted the plea and bound itself to a sentencing range with which it disagreed. The court therefore rejects Brown's argument.

With respect to Brown's appellate waiver argument, the government concedes that Brown has been prejudiced by his attorney's advice to accept a plea agreement that contained an appellate wavier. Indeed, it seems very likely that had Brown's plea agreement not contained an appellate waiver, the Fourth Circuit would have vacated his sentence and remanded the matter to the district court to impose a lower sentence. To review, the Fourth Circuit considered Brown's appeal and the appeals of his co-defendants together. Hampton, 750 F. App'x at 198. The court first found that it could not consider the merits of Brown and Jones's appeals pursuant to the appellate waiver contained in each's plea agreement. Id. Considering the merits of Hampton's argument, because his plea agreement did not contain a waiver, the Fourth Circuit found that the

PSR's cross-reference to first-degree murder was in error and remanded Hampton's case to the district court with instructions for resentencing. Id. at 200. Therefore, the court agrees with Brown that his attorney's advice to accept a plea agreement with an appellate waiver satisfies Strickland's prejudice prong.

As such, the sole issue before the court is whether Brown's counsel's advice to enter into a plea agreement with an appellate waiver was objectively unreasonable and renders his performance constitutionally deficient. The court agrees with the government that it does not.

Brown's counsel was not objectively unreasonable in advising Brown to enter into a plea agreement that contained an appellate waiver. The advice of Brown's counsel may seem like a mistake today because one reflecting on his performance with the benefit of hindsight knows that Brown would eventually have meritorious grounds for an appeal. However, the Supreme Court has made clear that the court is to review the constitutionality of counsel's performance from the time of the representation and must "reconstruct the circumstances" of the challenged conduct and resist the "distorting effects" of hindsight. Strickland, 466 U.S. at 689 (1984). At the time Brown's counsel advised him to enter his guilty plea, Brown was facing charges that carried significant prison time, and Brown's acceptance of a plea bargain reduced his possible sentence drastically. Had Brown gone to trial and been convicted on all counts, he would have received a sentence far greater than the one he is currently serving. Moreover, there is no indication that the government would have consented to a guilty plea without an appellate waiver. As such, Brown cannot show that his counsel was deficient in advising him to accept the terms of his guilty plea, including the appellate waiver.

The court, construing Brown's motion liberally and developing any meritorious arguments on Brown's behalf, will also address Brown's statement in his reply brief that his plea agreement and appellate waiver were "not voluntarily or intelligently entered [into]." ECF No. 784 at 1. Because this new claim contradicts Brown's sworn testimony, however, the court rejects it.

"[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005). Brown appeared before the court to enter a guilty plea on January 12, 2017. At the hearing, the court inquired into the consequences of Brown's guilty plea, each of which Brown acknowledged. Brown then indicated that his plea was voluntary:

> THE COURT: Has anyone threatened you or threatened anyone else or forced you in any way to plead guilty here this morning?
>
> THE DEFENDANT: No, sir.

ECF No. 622 at 12:8–11. After the government summarized the terms of Brown's plea agreement, including the terms of the appellate waiver provision, Brown again ensured the court that he understood the agreement's terms:

> THE COURT: How about summarize the plea agreement for me, Mr. Wheatley.
>
> THE GOVERNMENT: Yes, Your Honor.
>
> [. . .]
>
> Paragraph four of page two, which is the waiver of defenses and appeal rights which I'm going to read in full. The defendant is aware that 18 U.S.C. 3742 and 28 U.S.C. 2255 afford every defendant certain rights to contest

> the conviction and/or sentence. Acknowledging those rights, the defendant, in exchange for the concessions made by the Government in this plea agreement, except for a sentence that is above the advisory guideline range, waives the right to contest either the conviction or the sentence in any direct appeal or other postconviction action, including any proceedings under 28 U.S.C. 2255. This waiver does not apply to changes in the law, claims of ineffective assistance of counsel or prosecutorial misconduct raised pursuant to 28 U.S.C. 2255.
>
> [. . .]
>
> THE COURT: Mr. Brown, are those the terms of your plea agreement as you understand them, sir?
>
> THE DEFENDANT: Yes, sir.

Id. at 12:12–14; 13:11–24; 15:18–20. At the conclusion of the hearing, the court determined that Brown's plea was knowing and voluntary:

> THE COURT: All right. Has anyone made any promise other than your plea agreement to induce you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone made any prediction, prophecy or promise as to what your sentence is going to be?
>
> THE DEFENDANT: Sir?
>
> THE COURT: Has anybody said what your sentence is going to be, just said Judge Norton is going to give you probation, ten years, five years, 18 months, has anybody said what your sentence is going to be?
>
> THE DEFENDANT: No, sir.
>
> [. . .]
>
> THE COURT: It's the finding of the Court in the case of United States of America versus Christopher Sean Brown, that Mr. Brown is fully competent and capable of entering an inform plea, that his plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of his offense. The plea is, therefore, accepted, and he's now adjudged guilty of this offense.

Id. at 17:1–11; 18:4–11.  Because it plainly conflicts with his sworn testimony, the court must reject Brown's claim that he did not enter into his plea agreement knowingly and voluntarily.  As such, the court denies Brown's motion.

### B. Motion to Supplement

Brown has also filed a motion to supplement his § 2255 motion, which requests that the court allow him to add five additional grounds to his motion.  According to his motion to supplement, those proposed grounds are as follows: "(1) contract breach by the government; (2) misrepresentation by the government; (3) I[neffective] A[ssistance of] C[ounsel] for abandonment of available defenses; (4) [l]ack of [f]ederal bases [sic] for the plea under S.C. Code [§] 16-3-29; (5) for meeting of the parties to correct contract breach and plea negotiations; (6) [l]ockdown covid 19 [sic] and meaningful access to the court; (7) [e]videntiary hearing, alternatively; and (8) finally, U.S. v. Davis (No. 18-431) (S. Ct. June 24, 2019)."[2]  ECF No. 795 at 1–2.  Because Brown's proposed amendment would be futile, the court denies the motion to supplement.

The Rules Governing § 2255 Proceedings do not speak to the proper procedure for amending § 2255 motions.  Therefore, courts considering motions to supplement § 2255 petitions have generally defaulted to the general amendment procedure provided by Federal Rule of Procedure 15.  See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000); Scott v. United States, 2018 WL 1545586, at *12 (E.D. Va. Mar. 29, 2018).  Fed. R. Civ. P. 15(a)(2) provides that leave to amend "shall be freely given when justice so requires."  However, justice weighs in favor of denying leave where the proposed

---

[2] The court interprets this ground as an argument under United States v. Davis, 139 S. Ct. 2319 (2019).

13

amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). Indeed, where a proposed amendment to a § 2255 petition "fail[s] to state a claim for relief," courts have found that justice weighs in favor of denying leave. Scott, 2018 WL 1545586, at *12.

Six of Brown's proposed grounds for relief, all but his claim of ineffective assistance of counsel and his claim under U.S. v. Davis, are barred by the waiver provision of his plea agreement. That provision states in full:

> Waiver of Defenses and Appeal Rights: The Defendant is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence. Acknowledging those rights, the Defendant, in exchange for the concessions made by the Government in this Plea Agreement, except for a sentence that is above the advisory guideline range, waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. (This waiver does not apply to changes in the law, claims of ineffective assistance of counsel, or prosecutorial misconduct raised pursuant to 28 U.S.C. § 2255.)

ECF No. 302 at 2–3. Grounds 1, 2, and 4–7 of Brown's motion to supplement each fall within the scope of Brown's waiver, which the court has determined constitutes a knowing and voluntary wavier of Brown's appellate and collateral-attack rights, as none of those grounds assert a change in the law, a claim of ineffective assistance of counsel, or prosecutorial misconduct. As such, those grounds, even if the court permitted Brown to add them to his § 2255 motion, would not entitle Brown to relief.

Further, Brown's proposed ineffective assistance of counsel claim is substantively identical to a ground presented in his § 2255 motion, which has already been addressed by this court. Describing the proposed claim, Brown states, "Mr. Brown will also supplement that his attorney [] entered him into a nonfactual plea agreement that abandoned his available defenses . . . [because of] Mr. Brown's waiver . . . ." Id. at 3–4. In other words, Brown's proposed supplemental ineffective-assistance ground argues that

his attorney "abandoned available defenses" by advising him to accept a plea that contains an appellate waiver. The court has already addressed the substance of that claim above and rejected it. As such, permitting Brown to supplement his motion to add this claim would be an exercise in futility.

Brown's last proposed ground asserts that he is entitled to relief under United States v. Davis, 139 S. Ct. 2319 (2019). In Davis, the Supreme Court announced a newly recognized right by finding § 924(c)'s residual clause to be unconstitutionally vague. 139 S. Ct. at 2336. Although one of the counts against Brown in the indictment charged him with a violation of § 924(c), Brown eventually pleaded guilty to attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(5) and 2, and the government dismissed the § 924(c) count. In other words, Brown was not convicted under § 924(c), and thus Davis has no effect on his conviction or sentence. As such, permitting Brown to add his final proposed ground to his motion would be futile. Finding that no ground would state a valid claim for relief under § 2255, the court denies Brown's motion to supplement.

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller–El v.

Cockrell, 537 U.S. 322, 336–38 (2003). Here, Brown does not meet this standard because there is nothing debatable about the court's resolution of his § 2255 petition.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** Brown's motion to vacate, set aside, or correct his federal sentence, **DENIES** Brown's motion to supplement, and **GRANTS** the government's motion for summary judgment. A certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 23, 2020**
**Charleston, South Carolina**